UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CEASER REYES,<br><br>   Plaintiff,<br><br> v.<br><br>CAMARILLO, et al.,<br><br>   Defendants. | Case No. 23-cv-01014-JSW<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 37 |

## INTRODUCTION

Plaintiff, a California prisoner proceeding pro se, filed this civil rights case under 42 U.S.C. § 1983 against Sergeant Camarillo, Sergeant Vizzusi, Sergeant Tassio, Officer Minten, Officer Jize, Officer Avila, Officer Simonini, Officer Weidner, Officer Marshall, Officer Rodriguez, Officer Pfeifer, Officer Moran, Officer Chavez, Officer Preuss, and Officer Khoo, all of the San Jose Police Department ("SJPD"). (ECF No. 1.) The order of dismissal with leave to amend and the amended complaint were vacated, and the original complaint was ordered served upon Defendants based upon Plaintiff's cognizable claims that Defendants used excessive force during his arrest and denied him medical care for his injuries. (ECF No. 22.) Defendants filed a motion for summary judgment. (ECF No. 37.) Plaintiff has not filed an opposition.[1]

For the reasons discussed below, the motion for summary judgment is GRANTED.

## BACKGROUND

The following facts are not disputed except where noted.

---

[1] After Defendants filed the motion for summary judgment, the Court received two letters from Plaintiff indicating he had changed addresses and had not received the motion. (ECF Nos. 40, 41.) Thereafter, Defendants filed a proof of service indicating they re-served the motion upon Plaintiff at his current address. (ECF No. 42.) Plaintiff has not since responded to the motion or communicated with the Court, and there is no indication he did not receive the motion.

SJPD officers received a complaint on May 22, 2020, of a fight in the parking lot of the Arena Hotel in San Jose. One man, described as light-skinned, skinny, possibly Hispanic, and wearing beige pants, hit another man with a gun. Two others also "jumped" the man. Another person pointed a gun at the girlfriend of the man who was assaulted. When she said she would call the police, the assailant and three others got into a white Audi and drove away. SJPD officers later found the Audi abandoned on the side of the highway, and they impounded it.

Later that day, Defendant Sergeant Camarillo found a car matching the car that left the fight, and he followed it. After Camarillo turned on his lights and siren, the Audi fled, driving 50 miles per hour, through red lights, and onto a freeway. Camarillo did not continue the pursuit on the freeway. The Audi's license plate number indicated it belonged to Plaintiff's girlfriend, Brandi Cisneros, and Camarillo identified Plaintiff from a photo as the driver. Defendant Preuss told Camarillo that Plaintiff and Cisneros because they had been arrested weeks earlier for drug and firearms offenses.

SJPD officers, including Defendants, went to a house where Plaintiff and Cisneros were staying in San Jose with a warrant for their arrest. At approximately 12:15 a.m., on May 23, 2022, Plaintiff was arrested outside of that house. The parties' accounts of the circumstances of the arrest differ substantially.

In his verified complaint[2] (ECF No. 1), Plaintiff alleges Defendants "arrived in front of the house I was in," dressed in "tactical SWAT gear" to arrest him. (*Id.* at 2.) Plaintiff followed orders to "crawl[]" out of the house and lay "prone" on his stomach, and the "entire group" of defendants "surround[ed] him. (*Id.* at 3.) "Immediately after" his hands were handcuffed behind his back, and he was being "completely compliant," "one of the officers said, 'Stop resisting' . . . and then they began to punch, kick and hit me with their [sic] rifle butts, all over my head and body, even smashing my head against the ground." (*Id.*) According to Plaintiff, "[a]ll of the officers that I saw when I exited the house, who had approached and surrounded me, were all

---

[2] As explained in the order of service, the original complaint is the operative complaint. (*See* ECF No. 22 at 1:20-22 ("The operative complaint is the original complaint.").) Defendants get this wrong in their motion for summary judgment. (ECF No. 37 at 8.)

2

attacking me, the entire group, each and every one of them." (*Id.*) Plaintiff further alleges, "I did not see any of them not attacking, not even one, nor did I see any of them separate themselves from the group, or try to stop the others from attacking." (*Id.*) Defendant Sergeant Camarillo "had his knee on my neck, grabbed my nose and yanked it hard upward, saying into my ear, 'Tell me when it breaks.'" (*Id.*) Camarillo then ignored his requests for medical help. (*Id.* at 3-4.) Plaintiff alleges he "lost more than 50% of his hearing in both ears from the beating" and requires two hearing aids. (*Id.*)

Plaintiff attached to his complaint a police report by Defendant Vizzusi listing the other Defendants and himself as present during Plaintiff's arrest, and indicating that his body camera was "deactivated several times during this incident." (*Id.* at 8-9.) He also attaches a copy of his "mug" shot showing bruises and abrasions on his face, and the results of a 2022 auditory exam showing Plaintiff's hearing loss and prescription for "permanent" hearing aids. (*Id.* at 10, 13-17.)

One Defendant, Officer Weidner, has submitted a declaration. He states he was "one of the two officers who had hands on Reyes." (ECF No. 37-2 at ¶ 5.) He states he learned prior to the arrest Plaintiff was a "prior felon in possession of a firearm, who had allegedly assaulted a victim and struck him with a firearm that day," and that Plaintiff had "engaged on a high-speed vehicle case and evaded capture." (*Id.* at ¶ 3.) After reviewing the footage from his body camera, he saw SJPD officers tell Plaintiff to crawl out of the house and lay on the ground, Plaintiff "generally complied with orders." (*Id.* at ¶¶ 4-5.) When "flexible handcuffs" were placed on Plaintiff, Plaintiff "moved slightly" and "yelled." (*Id.* at ¶ 5.) Weibner does not identify "the other arresting officer," but he states it was not Defendants Preuss or Marshall. (*Id.* at ¶¶ 6-7.)

Defendants have presented police reports and video footage of Plaintiff's arrest from various officers' body cameras. (ECF Nos. 37-1, 37-5.)[3] According to the police reports, Plaintiff followed orders to come out of the house, crawl towards the officers, lay face down on the ground, submit to being handcuffed behind his back, and was taken into custody "without incident" by

---

[3] The police reports were electronically filed and appear on the electronic docket without page numbers. (ECF No. 37-1 at 6-184.) Defendants also manually filed a thumb drive containing both the reports, with "bates-stamped" page numbers, and the body camera video footage. (ECF No. 37-5 at Exhs. A, B.)

3

Defendants Avila and Weidner.

Twelve of the fifteen Defendants have submitted body camera footage and three did not.[4] The footage depicts police officers and police vehicles parked outside of a house in a residential area. Because of the darkness of the footage, it cannot be discerned precisely how many officers there are, but there appear to be approximately 15 officers, many of whom are pointing their guns at Plaintiff as he comes out of the house, crawls, and is handcuffed. There is also a police dog near Plaintiff.

It takes approximately one minute for Plaintiff to crawl from the entryway of the house out onto the street and to the other side of what appears to be a police van. He stops and lays flat on the ground for approximately one or two more minutes. While lying flat, several of the officers are around him in close proximity, some of whom appear be kneeling, handcuffing, and restraining him. Both because of the darkness and because it is crowded and the officers obstruct each others' cameras, the footage does not show precisely how many officers are part of this inner circle around Plaintiff, which or how many officers touch him, or what they are doing. A number of officers are standing outside of this inner circle within several feet, though it is not clear precisely how many. Plaintiff then follows orders to sit up and then stand, and he is handcuffed and escorted away by two officers.

During the two to three minutes of this incident, officers can be heard to order Plaintiff where to crawl, stop, lay flat, and put his hands. While Plaintiff is lying on his stomach and surrounded by officers, officers can be heard to say, among other things, "Stop," "Stop moving," "Stop kicking your legs," "Shut your mouth," "This whole playing dumb game doesn't work, dude," and "sit up." It cannot be discerned from the footage which officers say which of these things. Plaintiff says, among other things, "don't shoot me," "I'm sorry," "Yes sir," "I don't have nothing on me, sir," "I can't see," "I'm not moving," "What did I do?," "What the fuck?," and "This is crazy," "Can you explain to me?," and "I'm not resisting, sir." Plaintiff also makes a

---

[4] Defendants Sergeant Vizzusi, Officer Marshall, and Officer Preuss did not submit body camera video.

1  number of non-verbal sounds, such as "aaah," "aye aye," groans, and loud breathing.

2  According to the videos, while Plaintiff is lying on his stomach on the ground, Defendants
3  Avila, Weidner, and Rodriguez appear to be in the inner circle around him, Defendants Minten,
4  Tassia, Camarillo, Pfeifer, Moran, and Chavez standing outside the inner circle within several feet,
5  Defendant Jize in a vehicle, and Defendants Simonini and Khoo in an unidentifiable location.
6  Plaintiff.

## DISCUSSION

### I. Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id.* "[S]elf-serving affidavits are cognizable to establish a genuine issue of material fact so long as they state facts based on personal knowledge and are not too conclusory." *Rodriguez v. Airborne Express*, 265 F.3d 890, 902 (9th Cir. 2001).

At summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *Tolan v. Cotton*, 570 U.S. 650, 656-57 (2014). A court may not disregard direct evidence on the ground that no reasonable jury would believe it. *Leslie v. Grupo*

1   *ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999) (where nonmoving party's direct evidence raises

2   genuine issues of fact but is called into question by other unsworn testimony, district court may

3   not grant summary judgment to moving party on ground that direct evidence is unbelievable).

4         A district court may not grant a motion for summary judgment solely because, as here, the

5   opposing party has failed to file an opposition. *See Cristobal v. Siegel*, 26 F.3d 1488, 1494-95 &

6   n.4 (9th Cir. 1994). A verified complaint, such as the operative complaint (ECF No. 1) here, may

7   be used as an opposing affidavit under Rule 56 as long as it is based on personal knowledge and

8   sets forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 &

9   nn.10-11 (9th Cir. 1995).

**II.   Analysis**

Plaintiff claims Defendants used excessive force during his arrest and Defendant Camarillo denied him medical care following his arrest, The Court found these claims, when liberally construed, were cognizable claims under Section 1983 for the violation of his Fourth and Fourteenth Amendment rights, respectively.

There are no triable issues that, if resolved in Plaintiff's favor, would render his claims timely, however. For Section 1983 claims in California, the statute of limitations is the two-year period set forth at California Civil Procedure Code § 335.1. *Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004). Under federal law, accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. *TwoRivers v. Lewis*, 174 F.3d 987, 991-92 (9th Cir. 1999). The undisputed evidence shows Plaintiff knew about the injuries that are the basis of his claims — Defendants' alleged use of excessive force during his arrest and failure to provide him medical treatment — on the day of his arrest, May 23, 2020.[5] Consequently the two-year limitations began to run on that date and expired two years later, on May 23, 2020. Plaintiff did not file this case until March 9, 2023, over ten months later. The claims are therefore timely, absent tolling.

---

[5] Although Plaintiff did not know about the full *extent* of his injuries (e.g. hearing loss) until a later time, he knew he had been beaten and bruised by Defendants, allegedly, when it happened. "A cause of action accrues 'even if the full extent of the injury is not then known.'" *Gregg v. State of Hawaii DPS*, 870 F.3d 883, 887 (9th Cir. 2017).

1   A federal court must give effect to a state's tolling provisions. *Hardin v. Straub*, 490 U.S.
2   536, 543-44 (1989). California Civil Procedure Code section 352.1 recognizes imprisonment as a
3   disability that tolls the statute of limitations when a person is "imprisoned on a criminal charge, or
4   in execution under the sentence of a criminal court for a term of less than for life." Cal. Civ. Proc.
5   Code § 352.1(a). The Ninth Circuit has held that tolling under section 352.1 is triggered by the
6   plaintiff's arrest and incarceration. *Elliott v. City of Union City*, 25 F.3d 800, 802 (9th Cir. 1994).
7   Since that time, however, *Elliott* has since been rejected by the California Court of Appeal in
8   *Austin v. Medicis*, 21 Cal. App. 5th 577, 597 (Cal. Ct. App. 2018), where the state appellate court
9   held that § 352.1 applies only if the plaintiff is "serving a term of imprisonment in the state
10  prison" and does not apply to persons in pretrial custody. *See id*. at 590 n.4 (rejecting *Elliott*
11  because it was based on § 352, the predecessor to § 352.1, and therefore "did not have the benefit
12  of the legislative findings on this subject;" reviewing at length legislative history before
13  determining tolling inapplicable to persons not in state prison but in pretrial custody).

15  Since *Austin*, the Ninth Circuit, in an unpublished decision,[6] held that the federal courts are
16  "obligated to follow" *Austin's* holding because there is no evidence that the California Supreme
17  Court would rule to the contrary. *Shaw v. Sacramento County Sheriff's Dep't*, 810 Fed. App'x
18  553, 554 (9th Cir. 2020); *see also Garcia v. Corral*, Case No. 18-cv-04730-PJH, 2019 WL
19  931754, *3 (N.D. Cal. Feb. 26, 2019) (finding that "*Austin* provides persuasive state precedent"
20  and therefore § 352.1 only applies to toll the statute of limitations if the plaintiff was in state
21  prison as of when his claim accrued).

22  The court in *Shaw* explained:

> The district court correctly held that tolling was not available under California Code of Civil Procedure section 352.1, which tolls the statute of limitations during the time "a person" is "imprisoned on a criminal charge." Under the California Court of Appeal's decision in *Austin v. Medicis*—which we are "obligated to follow" in the absence of evidence that the California Supreme Court would rule to the contrary, *Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993,

---

[6] The Court is aware of no published Ninth Circuit case to address whether *Austin*, interpreting the current version of the tolling provision, controls this question.

7

> 995 (9th Cir. 2007) (internal quotation marks omitted)—the phrase "imprisoned on a criminal charge" means "serving a term of imprisonment in the state prison." 21 Cal.App.5th 577, 230 Cal. Rptr. 3d 528, 542 (2018)[]. Shaw has not alleged that she was serving a term of imprisonment, nor that she was detained in a state prison. So the district court was correct to hold that her one-day detention in a county jail did not entitle her to tolling under California Code of Civil Procedure section 352.1. *Id.* at 543; *see also Bd. of Regents of Univ. of N.Y. v. Tomanio*, 446 U.S. 478, 484, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980) (explaining that "a state statute of limitations and the coordinate tolling rules" are "binding rules of law" in a § 1983 case).

810 Fed. App'x at 554. The Court finds the rulings in *Shaw* and *Garcia* persuasive that as that, as there is no evidence the California Supreme Court would rule contrary to *Austin*, California Civil Procedure Code Section 352.1 does not apply where a claim accrues while the Plaintiff is a pretrial detainee and not in state prison. Here, as in *Austin*, the undisputed evidence shows Plaintiff was not in state prison, but was in the custody of the SJPD prior to trial, when Defendants used force against him and allegedly ignored his request for medical care. Consequently, there is no tolling of the limitations period under Section 352.1.

California's Emergency Rule 9, which tolled statutes of limitations until, at the latest, October 1, 2020, does not render this case timely.[7] *See* Cal. R. Ct., App. I, Emergency Rules Related to COVID-19, Rule 9 (tolling statutes of limitations for civil causes of actions) (amended eff. May 29, 2020). Even assuming this rule tolled the limitations period in this case until October 1, 2020, this would mean Plaintiff had until October 1, 2022 to file his claims. He filed them over five months later, on March 9, 2023.

Even viewing the evidence in a light most favorable to Plaintiff, there are no triable questions that, if resolved in Plaintiff's favor, would render his claims timely under the statute of limitations. Accordingly, the Defendants are entitled to summary judgment on these grounds.[8] Defendants took any adverse actions because of Plaintiff's filing his administrative grievance.

---

[7] Emergency Rule 9 states: (a) Tolling statutes of limitations over 180 days[.] Notwithstanding any other law, the statutes of limitations and repose for civil causes of action that exceed 180 days are tolled from April 6, 2020, until October 1, 2020. (b) Tolling statutes of limitations of 180 days or less[.] Notwithstanding any other law, the statutes of limitations and repose for civil causes of action that are 180 days or less are tolled from April 6, 2020, until August 3, 2020.

[8] In light of these conditions, the Court does not reach Defendants' alternative arguments for summary judgment.

8

Consequently, they are entitled to summary judgment on his First Amendment retaliation claim.

**CONCLUSION**

For the foregoing reasons, Defendants' summary judgment motion is GRANTED.

The clerk shall enter judgment and close the file.

This order resolves docket number 37.

**IT IS SO ORDERED.**

Dated: September 23, 2024

JEFFREY S. WHITE
United States District Judge